Judge Buckner
delivered the opinion of the court.
' The appellee, who was the plaintiff in the circuit court, having served Matthews, the tenant in possession, with a declaration in ejectment, he appeared at the August term of the court, in 1827, and was made defendant, upon entering into, the common rule of confessing lease, entry, and ouster, and agreeing to insist, at the trial, upon the title only. At the May term, 1828, Buford was, in like manner, admitted as a defendant with him: the court having overruled an objection to his admission; to which Gaines excepted. Matthews had settled upon the land in controversy, in the beginning of the year 1824, claiming adversely toBuford, and, as he alleged, under one Parker. it was, however, in the bounds of Buford’s tract of one thousand two hundred acres, whose claim to that tract is explained in the case of Buford vs. Gaines, decided a few days since.
Upon the motion to admit Buford as defendant, a deed of conveyance, from Matthews to him, for the land in controversy, bearing dale the 8th of April, 1828, was read as evidence to the court. It was admitted, that Matthews continued to hold adversely to Buford, until the date of that deed. The declaration contains various demises; but it is unnecessary to notice any, except that in the name of Gaines, as the jury were directed, at the instance of the appellants, to disregard the others, in which the appellee acquiesced. The appellee produced, on the trial, as evidence of his title, the patent to Harvie for twelve thousand one hundred and forty-eight acres, the deed from him to Barrett and Duval, as tenants in common, *35 tin(1 that from Barrett to himself, the dates of which are given, in the case referred to, and which are there described, and proved that Matthews was living in the bounds of the patent and deeds aforesaid, at the time the declaration was served upon him, and was still residing on the same place. The deed from Harvie to Barrett and Duval, was, by an agreement, entered of record, between the parties to this suit, admitted to be genuine. On the trial, the appellants objected to its introduction, as a recorded deed; but the court overruled the objection, to which there was an exception. What was the nature of Parker’s title, under which Matthews claimed, is not shown; as the defence was based on Buford’s title exclusively. On his part, the same evidence of title and Settlement by his tenants, was produced, as in the case to which we have already referred, and which it is therefore needless to repeat. It is sufficient to say, that he proved title in himself, to the twelve hundred acres claimed by him, by a connected chain of conveyances from Bartlett Bennett the patentee. The jury having found against Buford and Matthews, they submitted a motion for a new trial, on the grounds: 1st. That the verdict was against law, evidence, and'the instruction of the court. 2d. That the court erred in giving instructions to the jury, at the instance of the appellee, and in refusing to give others, moved for by the appellants. The court overruled the motion, and entered judgment in pursuance of the verdict, with directions to the sheriff and plaintiff, on the execution of the writ of habere facias, to take possession of an undivided moiety only, of the land and premises recovered; from which this appeal is prosecuted. The errors assigned, present all the points necessary to be considered.
Except the defence growing out of Buford’s claim, it is apparent that there was no ground on which Matthews could, with the slightest hopes of success, have resisted the claim of the appellee; unless for a forfeiture, under the act of January 7th, 1824, for a failure to improve; which we shall presently notice. The objection to the reading of the deed from Har-vie to Barrett & Duval, as a- recorded deed, wag correctly disregarded, because it was entirely unimportant, in relation to every point involved in the *36 present controversy, whether it was read asa record'ed or unrecorded deed. It has been insisted, on the oí the appellants, that the conveyance from Barrett to the appellee, was void, under the act referred to; but on examination of that act, it will be found* that its provisions, so far as they relate to the point under consideration, did not take effect until the 1st day of July, 1824, and the deed to-the appellee beare date on the 5th of the preceding March. Their attempt to show, by the production of the Auditor’s certificate, that Duval’s interest in the land had been forfeited to the state, by hia failure to pay the taxes due on it, was equally unavailing, because if it be even conceded, that such forfeiture had accrued, and was obligatory without inquest of office, it cannot affect the appeliee’s right to recover the undivided moiety conveyed to him by Barrett. With Fespect to the alleged forfeiture, as originating under the provisions of the act above mentioned, from a failure to-make the improvements required by the act, the court gave instructions hypothetically, as asked for by the appellants, and it is now insisted that the verdict is contrary to the evidence on that subject, and that a new trial ought, therefore, to have been granted. Without entering into an investigation of the ques-. tion, whether such forfeiture can be relied upon, without office found, we need only remark, that the position assumed is not warranted by the evidence. From that it appears, that previous to the 1st of August, 1825, the appellee had two hundred acres of land cleared and in cultivation where he lives, within the bounds of Harvie’s patent, and within the-bounds of the deed from Barrett to him.
Whore a por-son, who has madosuch improvements apon the land of 7th Jan. ’24, after-wards acclaim which .Tovars the same lana, it isunneessary aJ&'-tioretlim-proveniente, gay^hislast acquired title from forfeiture"
*36 Almost the whole of these two hundred acres was cleared and cultivated, before Gaines purchased from Barrett; but that could not render it necessary for him to make additional improvements. Und.er what claim he made these improvements, or what was its character,.is not shown. Of whatever description it be, it appears to be covered by Harvie’s-patent, To an undivided moiety of the tract embraced by that patent, Gaines set up claim, under the deed from Barrett, Previous to August 1825, there were such improvements on it as the statute requires; indeed*. by far greater-; and it would be an absurd construe* *37 Aon of the statute, to require him to have made other improvements, because he claimed a part of the same tract under a different title. If such a be proper, where should he have made the additional improvements? Would they have been more availing at any other point, in the bounds of the grant to H-irvie, than at the one where they are? Suppose A. has a patent for one hundred acres, upon which he had settled, and made the improvements required by the act, previous to August 1826: but ascertaining that B. had an elder patent, the boundaries of which ure the same with his own; he had purchased and received a conveyance from him; it surely could not be necessary, under the provisions of the statute, to make improvements at two places, on the same tract, to save the title derived under B. from forfeiture.
But we are of opinion that the court did, in other respects, err, to the prejudice of Buford.
At the instance of the appellee the following instructions were given to the jury:
1st. “That unless they believe, from the evidence, that the defendants, (Bulord and Matthews,) or one of them, settled on the land in controversy, under a title, either in law or equity dedueible of record, from the Commonwealth, and continued to hold the possession thereof, for the term of at least six years, next preceding the commencement of this suit, the right ■of the plaintiff to recover is not barred.
2d. “ That if they believe, from the evidence, that the defendant Matthews settled on the land in controversy, claiming to hold the same, adversely to Buford, and continued so to hold the same, until after the commencement of this suit, they ought to disregard so much of the evidence of the defendants, as goes to prove title or possession of Buford, which was held adversely to that of Matthews.”
If, considering the position occupied by Buford, he could claim protection under the act of Feb. 9th, 1809, “to compel the speedy adjustment of land claims,” growing out of the alleged possession of his twelve hundred acres, and settlement thereon by his tenant, the first of these instructions would, accord.. Ing to its literal construction, be erroneous; for, ac. *38 cording to such construction, it is supposed that, to-entitle the appellants to the protection of the statute, Buford or Matthews must, in person, have been settled, for the time named, upon the land in controversy; thereby excluding the idea, that a landlord may not avail himself of the statute, upon the settlement of his tenant; a position which cannot be sustained, unless upon the rejection of the well known maxim,- that tlqui f licit per alium^facit per se.”
The act of 9th Feb 1809, “to compel the speedy adjustment of land claims,” proteots a landlord, who' lias settled upon his land by his tenant.
There seems to be no principle of policy, or rule of sound construction, which would demand such an interpretation of the statute, as to make it necessary,, that the settlement required should have been by a defendant in person, before he can avail himself of its protection. But it does not appear, that the court intended the instruction to be construed literally, nor that the jury did so regard it; and we cannot therefore say, that it is erroneous. But the second instruction cannot be supported. It has been already remarked, that the same evidence of title and settlement by Buford’s tenants, on the land in controversy, was produced, in this case, that was given in that of Buford vs. Cox, on the trial of the forcible entry and detainer; and in the opinion delivered in that case, we said, that the testimony left it by no means clear, whether that part of Buford’s tract, which was not embraced by the inclosures of his tenant, should be considered at the time of that entry, in the actual possession of Buford or his tenant. The same remark may be made, as applicable to Matthews and his entry; but it is very certain that, for more than seven years before Matthews entered, and down to the institution of this suit, Buford’s tenants had resided within the bounds of his tract, and that either he, or his tenants had, with the exception of that entry, the continued and uninterrupted possession of the entire tract of the twelve hundred acres. We say, uninterrupted, because there was no attempt, in this case, as in that of Buford vs. Cox, to introduce any testimony, showing that Gaines had made an entry. And if the continued possession of the tract, was in fact, with the tenants, for the time pointed out, by the act of 1809; and if, during all that time, being next preceding the commencement of this suit, they, or some one of them, were settled on the land, it is *39 dear that the ejectment could not have been maintained, if instituted against Buford. It is true, that it was proved, that the line dividing the counties of Boone and Campbell, runs through the field- which Nathan Truesdale first cleared, and that said Trues-dale’s dwelling house was in the county of Campbell; and it has been insisted for the appellee, that'a settlement on land in one county cannot be said, with propriety, to be applied to a part of the same tract in another.
An entl'y, ¿county, cannot be applied to. land ty.
T° give noto-entry,the law requires that county where the land lies,
A settlement np°n!andap-tract, altho’ part of lie,i without iftecowltH‘
Who has a right to be ¡jefcndanUp1 ejectment. does not depend on any visions " but"0" apon rules of court, adopt-tisea^roufdie commence-meat of the anmU'e dls cretion of the court, wnich it has a right contreiingthe preparation for a trial in ejectment.
*39 An entry made on land, in one county, cannot be applied to that in another, for the reasons mentioned, in the opinion in the case of Buford vs. Cox; but it does not follow, that the same doctrine is applicable toa case, where a defendant claims protection the act of Feb. 1809, by showing, a settlement on the land for the time pointed out, and under such a title as the statute requires.
A man may make, with no great inconvenience, entries upon his lands, in two or more counties, where a part lies in each; and, to give notoriety and validity to ‘an entry, the law. requires that it should be made in th.e county where the land lies- But it might not only be extremely inconvenient and burthensome, to be compelled to make, on the same tract, settlements in two or three counties; but, unless a man could be fortunate enough to get a tenant, it would be impracticable.
The policy which dictated the statute, and the spirit which it breathes, are not at all calculated to lead to such a construction. Williams,' the took the written lease from Buford on the 21st Feb. 1820, and he swore that, from that time he considered himself in possession of the whole tract, until he moved off. When that event occurred did not certainly appear, but it was long after this suit was instituted. The settlement therefore, by Williams, if he was in possession of Buford’s entire, tract, from the time of the date of his written lease to the institution of this suit, would present an insuperable bar to Gaines’ claim, had he sued Buford.
The propriety of .admitting Buford to join in the defence, with Matthews, is not directly presented by the present record; but it is so intimately connected with the matter of the instruction under considera *40 tion, vhat an examination of the former will cast light on the latter* We shall therefore enquire, who can demand to be admitted, to defend, with the tenant in possession, upon whom the declaration has |)Gen served? This does not depend on any statutory provisions, but upon rules of court, adopted and prac-tised upon, from the commencement of the remedy by ejectment; and upon the exercise of that discre-^'on the >:ourt, which it cannot be doubted it has a right to exercise, in controling the preparation for trial of an ejectment, which is a mere fiction for the trial titles, to the Possession of land; and which a celebrated English judge declared to be, in form, a trick between two to dispossess a third, by a sham an(j judgment; that the artifice would be crimi-nah unless the court converted it into a fair trial, with the proper party; and that the control, which the court has over the judgment against the casual ejector, enables it to put any terms upon the plaintiff1 which are just.
No person is d^ncTn 1° le< imen: un'less he be ten-•mt.i-.nd is, or 'íi-.-í&es'íkí'/'or '••¡ceives the ■ T“t- .
be'íhnTne'd tode'endin ejectment.un-loss he hastíos- or conltruc-tive.
A person becada ade-fondant, in e-jectmentmust ♦itlf^feoon-13 nected to,and eonsistent jossion of the" occupier;and that, conso-quently, his title would be any claim ad-.versé to such
*40 In Runnington on ejectment, 166, it is said: “By the common law, no man is admitted to defend unless ^16 tenant, and is, or h,is been, in possession, or re-ceives the rent; because it is an act of champerty, for any one to interpose and cover the possession with bis title.” This doctrine is recognized and literally a£t°pted in the case of Dougherty vs. Estill, I Bibb, 128, in which it is added, “he must have the possession, actually or constructively; for it would be vain t0 demand possession of him who hath it not.” And again, “the person claiming to be let in to defend, must show that his title is connected to, and consistent wj¿b the possession of the occupier; and consequently, that his title would be divested or disturbed by any claim adverse to such possession. A mere stranger to the possession, shall not be admitted to defend.” In the case of Crockett vs. Lashbrook, V. Monroe, 538, it is declared that no other than the landlord, cin be admitted to defend with the tenant, “nor is the landlord, when admitted, allowed to put any thing else in issue but title of the land, in the tenant’s possession. The meaning and extent of the privilege aM°we(l him, is a simple defence for the tenant’s possession, and not to bring with him into the cause, other controversies about title, between him and the- *41 lessor of the plaintiff, in which the tenant had nfrconcern.” We do not suppose that the term landlord, here used, is to be understood as meaning him who, being the proprietor of the land, has leased it to the tenant, on whom'the declaration has been served. If it is, the doctrine laid down in the authorities referred to, must be considered as general rules only, subject to many exceptions; for it is said, that one claiming the reversion by deed, after the death of tenant for life, who received the rent, may be admitted to defend, because a judgment against the in possession might shake his title. Runnington, 181, says, it seems “that a mortgagee, who is out of possession, may be admitted to defe d,” &c. Lord Mansfield, in the case of Fowler vs. Shamtille, III Burrow, 1290, speaking of a decision reported in Barnes, in which it was determined, that where a person claiming as devisee, prosecuted an ejectment against the tenant in possession, another, who also claimed as devisee, ought not to be admitted as defendant, because the court had no jurisdiction to admit, him, reprobated the doctrine as there laid down, saying, that the court can never want jurisdiction to prevent the plaintiff from recovering without a proper trial; that an ejectment is the creature of Westminster Hall, introduced within time of memory, and moulded gradually into a course of practice, by rules of courts; and that the same authority which had brought it thus far, might certainly carry it to a higher degree of perfection, as experience happens to show-inconveniences or defects. At a subsequent period, it was said by the same learned judge, that “when a person applies to be made defendant in the room of the tenant, it is not necessary that.hu should be the actual landlord, it is sufficient if lie have an interest only, in the land;” Runnington, 181; see also same author, 179, and again 182, from which it appears that the term “landlord,” extends to not only every person whose title is connected to, and consistent with, the possession of the occupier, and which would be divested or disturbed by a judgment in favor of .a person claiming adversely to meh possession, but to persons claiming to be landlords de jure, in right of representation to a landlord defacto. We do not wish io be understood as recognizing this doctrine, so far *42 as it may he understood as maintaining the ground that a person has a right to be admitted to defend, with the tenant in possession, in every case, merely because he may claim to be a landlord de jure, or where he may even show that he has apparently a vaiid claim, and especially, where the tenant has not acknowledged him as his landlord, and consents to his being admitted. But the authorities cited, and the reasons upon which they are founded, are, in our opinions, sufficient to show, considering all the circumstances of the case under consideration, that the circuit court did not err in permitting Buford to be entered as a defendant with Matthews. We do not say that the testimony was sufficient to prove that his tenant had been settled on his tract of twelve hundred acres, having the whole of it in possession for such a time, as under the statute on the subject, would bar the right of action asserted by the appellee; but if the. testimony couduced to prove such a case, it was-sufficient to authorize his admission as defendant. If Buford’s tenant was so possessed and settled, Matthews’ entry was a trespass, unless he entered under an elder grant, before the limitation attached, and there was no proof that he entered under any patent whatever. Under such circumstances, he had a right to make his peace with Buford, by becoming his tenant, in the manner he did; arid there was no principle of law or morality which forbade Buford from entering into the arrangement with him. Irreparable injury might have resulted to him, by his failure to do it; for it is yet to be determined, whether the statute of the 9th of February, 1809, furnishes a shield only to the occupant, or may, if the occasion shall require it, be used as a weapon for attack. It is, to be sure, well settled, that twenty years adverse possession, not only tolls the right of entry, but confers a right of possession, which may be enforced by suit; and if the statute referred to, had declared (hat a settlement, for the time therein named, under a connected title in law or equity, deducible of record from the Commonwealth, should bar all action, &c. it might be contended, perhaps successfully, by analogy to the doctrine, settled in the case of Stanley vs. Earl, V Litt. 281, that it would toll the right of entry and confer a right, which might be the foundation os *43 a recovery in an action of ejectment; but it is provided, “that possession as aforesaid, to bar the actions or suits aforesaid, must and shall have been continued,for the aforesaid term of six years, next preceding the commencement of any such suit or action.” But this act does not, like that of the 17th of Dec. 1796, expressly declare that the right of entry shall be barred. Suppose that after a settlement for the time required by the statute, but not for twenty years, the settler shall remove from the land, leaving no tenant on it, and another, under an elder grant, obtains the possession. Within two years thereafter, the settler might turn him out by writ of forcible entry and detainer; but-could he, thereafter, do so by ejectment.
ger to the posshall j10* be admit-in ejectment, In ejectment', none but the. b^admitted1 todefendwith the tenant,
*43 It may be well doubted, whether he can, and whether a settlement, under the act alluded-to, does, not rather suspend-than tell the right of entry.. If so, Buford’s only means of obtaining the protection to which, under the act, the testimony conduced to show that he was entitled, was to be admitted as defendant, and to insist on his title, supported by proof, if in his power, of the continued settlement and possession of his tenant; for if the tenant was settled on the tract, having possession of the whole of it, before the intrusion of Matthews, that could not affect the efficacy of the settlement. Matthews was, to be sure, in actual possession, to the extent of his enclosures, but the tenant, or Buford through him, was in the constructive possession of it, for Matthews seems to have entered as a mere trespasser. We are, therefore, of opinion, that Buford’s evidence of title and settlement by his tenant,, ought not to have been rejected, notwithstanding-Matthews held adversely to him, until' the execution of the deed from him, of the 8th of April; 1828.
We deem it unnecessary to consider the various instructions moved for by the appellants, and rejected by the court, (some of which seem not to have been very carefully worded,).because the principles here laid down, will, it is presumed, serve to show what instructions, in relation to title and settlement, should be given on a seconditrial.
The judgment of the circuit court must be reversed, and the cause remanded'for further proceedings to be had, in-accordance with this opinion.-
Hoggin, for plaintiffs; Mills and Brown, and Wick-/{/?e and Woolley, for defendants.